[ORAL ARGUMENT NOT SCHEDULED]
**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

John Doe Company,

        Plaintiff-Appellant,

    v.

Consumer Financial Protection Bureau; Richard Cordray, in his official capacity as Director of the Consumer Financial Protection Bureau,

        Defendants-Appellees.

No. 17-5026

**OPPOSITION TO APPELLANT'S EMERGENCY
MOTION FOR AN INJUNCTION PENDING APPEAL**

**INTRODUCTION AND SUMMARY**

The Consumer Financial Protection Bureau (the Bureau or the CFPB) initiated an investigation related to the business of Appellant John Doe Company (the company). App. 9. The company purports to "purchase[] future income streams," like pensions, from individuals. App. 90 ¶ 16. The Bureau sent the company a civil investigative demand (CID) seeking information about the company's operations. App. 9. The Bureau's investigative interest was consistent with its announced intention to investigate the sorts of pension transactions in which the company claims to engage. App. 16. The Bureau was not the first

regulator to launch such an investigation in connection with the company's operations: at least six state regulators have already investigated the company and publicly concluded that it operated its business in violation of consumer protection laws. *See* App. 8.

After the Bureau denied the company's petition to set aside the investigative demand, the company preemptively sued the Bureau in the district court and sought preliminary injunctive relief to prevent the Bureau from notifying the public, pursuant to the Bureau's duly promulgated regulations, that the Bureau had denied a petition by the company to set aside a CID, or from taking any action adverse to the company. The district court correctly refused to award the company "the dramatic preliminary injunction" it sought, App. 12, as the company had failed to demonstrate either a likelihood of success on the merits or irreparable harm, App. 20.

The company also asked the district court to award it the same "dramatic" relief in the form of an injunction pending appeal that would have prevented the Bureau from taking any adverse action against the company until this Court issued a ruling and mandate resolving the company's appeal. App. 422. The district court correctly rejected the company's request for such sweeping relief, instead awarding it a "narrow" injunction preventing the Bureau from publicly disclosing the company's identity "until March 3, 2017." App. 1, 19. Consistent with the district

court's narrow injunction pending appeal, on February 21, 2017, the Bureau filed a petition under seal in the United States District Court for the Central District of California to enforce its CID against the company. App. 438.

The company now turns to this Court in its third attempt for an injunction that would, in the district court's words, "effectively shut down the agency … with respect to [the company]." App. 71:22-72:1. Such an injunction would prevent the Bureau from disclosing the true fact that the Bureau's Director, in a formal Bureau proceeding, issued an order denying relief that the company requested. It would also put an indefinite stop to the Bureau's investigation and, it appears, prohibit the Bureau from proceeding with its petition to enforce the CID in the Central District of California.

This Court should deny the company's motion because the company cannot demonstrate that it will suffer irreparable injury in the absence of the sweeping injunction pending appeal it seeks. Nor can the company show a likelihood of success on the merits of its appeal because the district court did not abuse its discretion by refusing to issue a preliminary injunction. Finally, the public's interest in the enforcement of duly-enacted consumer protection laws weighs heavily against an injunction pending appeal.

## STATEMENT

### A.     Legislative and Regulatory Background

Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act to, *inter alia*, "protect consumers from abusive financial services practices." Pub. L. No. 111-203, 124 Stat. 1376, 1376 (2010). Title X of that Act established the Bureau and charged it with primary responsibility for "regulat[ing] the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. 5491(a). To carry out these responsibilities, the Bureau is empowered to "tak[e] appropriate enforcement action to address violations of Federal consumer financial law." *Id.* at 5511(c)(4).

As part of its enforcement powers, the Bureau has investigative authority to issue CIDs requiring the production of documents, testimony, or other information from "any person" that the Bureau believes may have information "relevant to a violation." *Id.* at 5562(c)(1). The statute gives the recipient of a CID the right to "petition for an order by the Bureau modifying or setting aside the demand." *Id.* at 5562(f)(1); *see also* 12 C.F.R. § 1080.6(e). Like other formal proceedings before an agency or in court, petitions to set aside and Bureau orders in response are presumptively public—in this case, under a duly promulgated regulation. 12 C.F.R § 1080.6(g) ("All such petitions and the Director's orders in response to those petitions are part of the public records of the Bureau unless the Bureau determines

4

otherwise for good cause shown."); *see also FCC v. Schreiber*, 381 U.S. 279, 293 (1965); 5 U.S.C. 552(a)(2)(A). The Bureau's regulation is "virtually identical" to a long-standing parallel regulation of the Federal Trade Commission (FTC). App. 7; *see also* 16 C.F.R. § 2.10(d).

Neither a CID nor a Bureau order denying a person's petition to set aside a CID is self-enforcing. *See Morgan Drexen, Inc. v. CFPB*, 979 F. Supp. 2d 104, 108 (D.D.C. 2013), *aff'd*, 785 F.3d 684 (D.C. Cir. 2015) ("CIDs are not self-enforcing, and [the statute] does not impose a fine or penalty for failure to comply with a CID."). Rather, if a person fails to comply with a CID, the Bureau may petition a district court "in which such person resides, is found, or transacts business," for an order requiring that person to comply with the CID. 12 U.S.C. 5562(e)(1). That court has "jurisdiction to hear and determine the matter so presented," including appropriate constitutional challenges, and "to enter such order or orders as may be required." *Id.* at 5562(h)(1); *see also* App. 7. "Any final order" entered by the district court "shall be subject to appeal pursuant to [28 U.S.C. 1291]." 12 U.S.C. 5562(h)(2).

## B.     Factual Background and Prior Proceedings

1.  In November 2016, the Bureau issued a CID to the company seeking information about its products, services, and operations. App. 112. Six different state regulators have also investigated the company and found that it violated

consumer protection laws. App. 8, 20, 290-95; Mot. 21. As a result, the company "has been the subject of considerable negative publicity through the past few years." App. 8. Meanwhile, it has long been public that federal regulators, including the Bureau, are investigating the kind of pension products that the company claims to offer. *Id.*

2.  The company filed a petition to modify or set aside the CID. App. 9. In a written order by its Director, the Bureau considered the company's arguments and denied its petition. App. 227-32. The Bureau also denied the company's request for confidential treatment after concluding, among other things, that the company had not met its burden to "ma[k]e a factual showing that information in the petition falls within one of the [Freedom of Information Act] exemptions." App. 231.

Although neither the Bureau's order nor the CID was self-enforcing, the company "raced to court." App. 3. Among other relief, the company's complaint sought an order "declaring the Bureau's current structure unconstitutional" and a permanent injunction prohibiting "the Bureau from taking any further action against [the company]." App. 105. The company likewise moved the district court to issue a preliminary injunction that would have prevented the Bureau from taking any "action adverse to [the company]—including any action in furtherance of the civil investigative demand served on [the company], such as publishing [the company's] petition to set aside or modify the demand or initiating any

6

enforcement action against [the company]—until [the district court] ha[d] made a final determination in this case." App. 239. The company's primary argument in support of its motion was that the Bureau was violating the Constitution and causing the company irreparable harm by continuing to exercise its statutory functions after this Court rendered its decision in *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016), but before the mandate had issued. *See, e.g.*, App. 234, 241, 242, 246, 249, 250-51. To facilitate an appropriate briefing schedule and to permit the district court time to rule, the Bureau voluntarily agreed to refrain from taking any further action with respect to the company before noon on February 17, 2017. App. 272, 413-14. After the parties had fully briefed the company's motion and the district court had held a hearing, this Court, on February 16, 2017, granted the Bureau's petition to rehear *en banc* the panel decision in *PHH*. The district court held a hearing the next morning at which it denied the company's motion for a preliminary injunction. App. 64, 76. The district court also denied in part and granted in part the company's motion for an injunction pending appeal. App. 76. The court entered an order and a memorandum opinion later that day. App. 1, 2-21.

    3.  The district court denied the company's motion for a preliminary injunction finding that the company was "unlikely to succeed on the merits" and "unlikely to suffer irreparable harm in the absence of a preliminary injunction." App. 11.

The court identified two independent reasons why the company had not shown a likelihood of success on the merits. First, while recognizing that the company had argued that its motion was not affected by the vacatur in *PHH*, the court determined that the company had not provided independent briefing of the constitutional issues, "instead relying wholesale" on the panel decision in *PHH*. As a result, the court explained that "it was not in a position" to find that the company had a "high likelihood of succeeding on an eventual adjudication of those constitutional claims," and was "disinclined to exercise its equitable, discretionary power" to award preliminary relief. App. 11-12. Second, the court explained that even if it were to adopt the *PHH* panel's reasoning based on that opinion and without further briefing by the company to meet its burden, the company's "likelihood of success with respect to obtaining its sought-after remedy is low." App. 12. This was because the *PHH* panel had remedied the constitutional problem it identified by excising a provision of the statute that makes the Bureau's Director subject to removal only for cause, "which would still allow the CFPB to pursue enforcement actions against John Doe Co." *Id.*

The district court likewise found that the company had not established a likelihood of irreparable harm on any of the three grounds it identified.

First, the court found that the company could not demonstrate that it would suffer irreparable harm if the Bureau were not enjoined from investigating the

company or bringing an enforcement action against it because any harm "could be remedied if and when the CFPB brings an enforcement action against John Doe Co." App. 14. Indeed, the district court explained that the company's argument was inconsistent with how this Court had handled claims that "enforcement actions [were being] pursued in an unconstitutional manner or by an unconstitutional entity because having to submit oneself to an enforcement proceeding typically does not constitute irreparable harm." App. 14 (citing *Jarkesy v. SEC*, 803 F.3d 9, 26 (D.C. Cir. 2015), and *Deaver v. Seymour*, 822 F.2d 66, 69 (D.C. Cir. 1987)). The court noted further that the company had neither claimed it had a right not to be investigated nor had it adduced "any further evidence that [the company] is being concretely harmed by the current state of affairs." App. 15 & n.5. The district court made clear that even if the company could bring a "'free-standing' liberty interest claim untethered to any action by the CFPB, that does not mean that it is entitled to emergency injunctive relief now." App. 14-15.

Second, the district court found that the company had failed to show that it would suffer irreparable harm with respect to the Bureau's CID. App. 15. Emphasizing that Bureau CIDs "are not self-enforcing," the court noted that if the Bureau decided to enforce the CID against the company, it would "have an adequate federal forum in which to raise its constitutional arguments wherever the CFPB brings suit." *Id.* (citing 12 U.S.C. 5562(e)(1)).

9

Third, the court held that the company had not shown that it would suffer irreparable reputational harm from publication of the CID and the Bureau's Order denying the petition to set the CID aside. App. 15. The court found that "the public is already well aware that John Doe Co. has been the subject of state-level investigations and that the entire industry is under scrutiny from the GAO, CFPB, and FTC," that publication of the CID would only "establish that, at most, the CFPB is potentially investigating John Doe Co.," and that it "appears dubious" that the company's "employees and service providers would be caught off-guard by the publication of the CID-related documents" as the company had argued. App. 16. The court further found that the company had failed to back up its "conclusory" assertions and "overgeneralized statements" with "empirical examples or, for that matter, any data" either from its own experience or those of other companies that had received CIDs from the Bureau or the FTC. App. 16-17. In sum, the Court found that the company "failed to put forth any non-speculative evidence demonstrating that the CFPB's publication of the CID and other relevant documents threatens its very existence or will result in significant, quantifiable financial harm." App. 17.

Finally, because it had already concluded that the company had shown neither a likelihood of success on the merits nor that it would suffer irreparable harm, the court did not address the interests of other parties or the public other than

10

to observe "that the public has a strong interest in the vigorous enforcement of consumer protection laws." *Id.*

The district court's opinion also explained that it granted the company a "narrow" two-week injunction pending appeal to avoid mooting the company's appellate rights with respect to disclosure of the CID documents. App. 20. The court found that the company's constitutional claim did "present a serious legal question" and that the company would be irreparably harmed "under the [company's] competing legal interpretation." App. 18-19. The court also concluded that the interests of the Bureau and the public would not be significantly affected by the injunction because the Bureau could continue its investigation and because "the public has already been warned about this company." App. 20.

## ARGUMENT

An injunction pending court review is an "extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[1] *Id.* at 20.

---

[1] The company's motion invokes an older test for granting an injunction pending appeal that turns on whether the movant has raised "serious" legal questions about the merits of its case. Mot. 8. It remains an open question whether the *Winter* Court

The company has not made the required "clear showing." First, as the district court correctly held, the company cannot demonstrate that it will suffer irreparable harm in the absence of the "dramatic" preliminary relief it seeks. Consistent with this Court's decisions in *Deaver*, *Jarkesy*, and *Morgan Drexen*, the company will not be irreparably harmed if this Court does not enjoin the Bureau from proceeding with its enforcement petition in the Central District of California because the company can raise its constitutional arguments in response to that petition. And, as the district court found, the company has failed to put forth any non-speculative evidence that it will suffer irreparable reputational or economic harm if the public learns that the company received a CID from the Bureau. App. 17.

Second, the company cannot show that it is likely to prevail on the merits of this appeal. This Court "review[s] a district court's weighing of the four preliminary injunction factors and its ultimate decision to issue or deny such relief for abuse of discretion," while legal conclusions, including with respect to irreparable harm, "are reviewed de novo." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The district court did not abuse its

_____

abrogated the serious-legal-questions approach. *See Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014); *see also Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (Kavanaugh, J., concurring). The Court need not address this issue here because the company is not entitled to relief even under the lower standard. *See Aamer*, 742 F.3d at 1043.

discretion here. Particularly given that the company could not demonstrate irreparable harm, the district court did not abuse its discretion when it declined to exercise its equitable authority to enter an expansive preliminary injunction on a constitutional question that had not been independently briefed, or when it based its evaluation of the company's success on the merits on the injunctive relief that the company sought in its complaint.

Third, the balance of equities and public interest weigh in favor of continued enforcement of the nation's consumer protection laws.

## I.   The Company Will Not Be Irreparably Harmed By Litigating With The Bureau In A Different Court Or By Disclosure That It Received A CID.

1.  The company's claim of "constitutional" irreparable harm, Mot. 14, fails because the company can raise its constitutional arguments in response to the Bureau's petition to enforce the CID in the United States District Court for the Central District of California. As the district court recognized, under *Deaver* and *Jarkesy*, a party does not suffer irreparable harm merely because it is not permitted to preemptively raise its constitutional claims at the time and in the court of its choosing.

In *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), a former White House official sought injunctive relief to prevent an independent counsel from prosecuting him. *Id.* at 66. The former White House official challenged the constitutionality of the independent counsel on separation of powers grounds and

13

claimed that he would suffer irreparable harm if the independent counsel were permitted to continue prosecution. *Id.* This was insufficient to justify an injunction because even assuming the official's separation of powers theory was correct, the court held that the official's "rights c[ould] be vindicated by a reversal of any conviction." *Id.* at 71.

*Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015), reaffirmed this aspect of *Deaver*. In *Jarkesy*, this Court denied relief to a plaintiff who sought to enjoin an agency proceeding that he claimed violated the non-delegation doctrine. The plaintiff claimed that "Congress ha[d] unconstitutionally delegated power to the SEC to decide whether to place him in an administrative proceeding rather than in a court action." *Id.* at 27. The court held that the plaintiff was required "to undergo the remainder of the proceeding, notwithstanding his threshold claim that it was wrongly initiated." *Id.* at 25. This was because, just as in *Deaver*, even if the plaintiff could show that the proceeding against him violated the non-delegation doctrine, the plaintiff "ha[d] no inherent right to avoid an administrative proceeding at all." *Id.* at 27. And since he could petition for review of a final order in a court of appeals, "his 'rights c[ould] be vindicated by a reversal' of the Commission's final order." *Id.* (quoting *Deaver*, 822 F.2d at 71).

As in *Deaver* and *Jarkesy*, so too here. The company has asserted a constitutional right not to be subject to the authority of a Bureau whose Director is

not removable at will by the President; it has not claimed a right not to be subject to federal or Bureau authority "at all." *Id.* Thus, the company would only have been able to establish irreparable harm if "[its] rights [could not] be vindicated" by judicial review in the ordinary course. *Id.* The company has not made that showing here, particularly because the Bureau's petition to enforce the CID in the Central District of California presents the company with immediate access to judicial review. Indeed, in a case with similar facts to those here, this Court affirmed the district court's dismissal of a party's separation of powers claims for declaratory and injunctive relief. *See Morgan Drexen*, 785 F.3d at 693-95. In so doing, this Court found that the party could not demonstrate irreparable harm by being required to litigate its constitutional arguments in district court in response to an enforcement action. *Id.* at 695 & n.3.

While the company cites a number of cases for the proposition that the deprivation of a party's constitutional rights constitutes irreparable harm, Mot. 15-17, these authorities are beside the point. What matters is whether the company would actually be deprived of its constitutional rights if it is required to litigate its separation of powers claims in the Central District of California in response to the Bureau's petition to enforce the CID.[2] *Deaver*, *Jarkesy*, and *Morgan Drexen*

---

[2] Even if the Bureau had not yet filed its petition, the company still would not be able to establish irreparable harm by having to wait for the Bureau to act. The company was not at risk of being deprived of a personal constitutional right. Nor

provide a clear answer: the company would not be deprived of its constitutional rights. The company's efforts to distinguish *Deaver* and *Jarkesy* fare no better. Its arguments, Mot. 17-19, repeat the error of conflating the merits of its standalone constitutional challenge with whether it has established irreparable harm entitling it to emergency injunctive relief, *see* App. 14-15.

2.  The company cannot demonstrate that it will suffer severe economic and reputational injury if the public learns that the company received a CID from the Bureau. As in the district court, the company's conclusory and unsupported claims of financial injury are fatally undermined by what the public already knows about the company (that six state regulators have already concluded that the company violated consumer protection laws) and the Bureau's investigative interests (that the Bureau has stated that it is investigating pension advance products). The company claims without support that the state regulatory actions are "wholly unlike" the announcement by the Bureau of an unresolved investigation because "the state-level press releases came *after* the investigation was resolved." Mot. 21-

---

was this a case in which the company was required "to bet the farm by violating the law in order to challenge the constitutionality of the regulating agency," *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 54 (D.C. Circ. 2015) (quotation marks omitted). The preliminary injunctive relief the company has sought would not change the law governing what the company can or cannot do. Even if the company won preliminary relief, the Bureau (or a state attorney general or the FTC) would, in the future, still be permitted to pursue any and all claims against the company with respect to its current conduct. Thus, the company has never faced the kind of "Hobson's choice" that might support judicial intervention before an enforcement action is initiated. *Cf. Morgan Drexen*, 785 F.3d at 694-95.

22. This argument is both odd and factually wrong. It is odd because it assumes the company's employees and partners would be less concerned about findings that the company actually engaged in wrongdoing than about the mere existence of an investigation. It is wrong because at least two of the state regulatory actions were disclosed to the public before they were resolved. *See* App. 292 (noting that one settlement resolved previously-announced "charges" by a state regulator that the company was "lending without a license"); App. 295 (noting that one regulator first issued an order in which it stated that it "believed" that the company had violated the law and that later the regulator and the company "entered into a stipulation").

Particularly in this context, the district court did not abuse its discretion in declining to issue an injunction on nothing more than the company's self-serving say-so that the publication of the CID-documents would irreparably harm its business. This Court should do likewise.

## II.    Because The Company Cannot Demonstrate That The District Court Abused Its Discretion In Refusing To Grant It A Preliminary Injunction The Company Cannot Show A Likelihood Of Success On The Merits.

Because the district court did not abuse its discretion in denying the company's motion for a preliminary injunction, the company cannot demonstrate a likelihood of success on the merits. Contrary to the company's brief, Mot. 10-14, the question before the Court is not whether the Bureau's structure is

17

constitutional, but rather whether the company is likely to prevail on the merits of this appeal from the district court's refusal to grant a preliminary injunction. *See Wash. Metro Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (stating standard as whether movant has "made a strong showing that it likely to prevail on the merits *of its appeal*" (quotation marks omitted) (emphasis added)).

The company cannot meet this standard. The district court did not abuse its discretion in finding that the company could not demonstrate irreparable harm (for the reasons discussed in the previous section) or in finding that the company had not demonstrated a likelihood of success on the merits (for the reasons discussed in this section).

1.  In an appropriate exercise of its equitable discretion, the district court declined to enter the far-reaching injunctive relief the company requested without independent briefing of the company's constitutional argument. The company's claim that the district court was required to issue a preliminary injunction in the company's favor unless the court affirmatively found that the Bureau's structure was constitutional, Mot. 7, turns the preliminary injunction standard on its head. Preliminary injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Thus, it was the company's burden to make a clear showing of a likelihood

18

of success on the merits, not the court's duty to show the reverse.

The district court did not abuse its discretion in finding the company had not met its burden. While the company had preserved the argument that it could demonstrate a likelihood of success on the merits in the event that this Court granted rehearing *en banc* in *PHH*, the district court was correct to observe that the parties had not briefed the constitutionality of the Bureau's structure apart from the panel decision in *PHH*. *Cf. United States v. Weathers*, 186 F.3d 948, 953 n.4 (D.C. Cir. 1999) (explaining that where the "full court … granted rehearing en banc and vacated the judgment," the "panel's decision ha[d] no precedential value" (quotation marks omitted)). Indeed, even the summary that the company highlights in its motion, Mot. 12, is a series of quotes from the panel opinion in *PHH*, *see* App. 250-51. Particularly because this Court's action in *PHH* came the day before the district court had to rule on the company's preliminary injunction, it was well within the district court's discretion to withhold sweeping injunctive relief.

2.  Likewise in evaluating the company's likelihood of success on the merits in the alternative, the district court did not abuse its discretion by analyzing the permanent injunctive relief that the company sought in its complaint, namely an injunction that would prevent the Bureau from "taking any further action against [the company], including publication of [the company's] petition to set aside or modify civil investigative demand or initiation of an enforcement action against

19

[the company]." App. 105. Thus, the district court was correct to say that adopting the *PHH* panel's remedy of excising the for-cause removal provision from the statute "would also likely doom John Doe Co.'s prospect for its sought-after remedy" as identified in its complaint because excising the for-cause removal provision "would still allow the CFPB to pursue enforcement actions against John Doe Co." App. 12.

3. Moreover, as the Bureau explained in the district court, the company could not demonstrate a likelihood of success on the merits of its separation of powers claim because it was unlikely to be able to obtain the permanent injunctive or declaratory relief it sought. App. 310-21

The company was unlikely to establish that it had a right to an injunction that would prevent the Bureau from disclosing that the company petitioned the Bureau to set aside the CID or that the Bureau denied that petition. By regulation, petitions to set aside CIDs and Bureau orders are presumptively part of the Bureau's public records. *See* 12 C.F.R § 1080.6(g); *accord* 5 U.S.C. 552(a)(2)(A) (requiring "[e]ach agency" to, "in accordance with published rules . . . make available for public inspection in an electronic format . . . final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases"). The company identified no privacy interest in these facts. Disclosure would not violate the Trade Secrets Act or the Privacy Act. Nor could the company

20

claim that these facts would be protected from disclosure in the event of a request under the Freedom of Information Act (other than by suggesting that the Bureau might not be subject to that Act at all). App. 398. Finally, the company could identify no basis in separation of powers doctrine for a right to litigate against the Bureau in secret. *See* App. 312-13.

The company also could not establish that it was likely to obtain an injunction preventing the Bureau from attempting to enforce the CID. As the Bureau explained, App. 314-18, the court lacked jurisdiction under *Jarkesy* to issue such an injunction because Congress created a special statutory review scheme to govern enforcement of the Bureau's CIDs. Nor could the company establish that it was likely to obtain declaratory relief or an injunction preventing the Bureau from ever bringing an enforcement action against it. Declaratory relief was unlikely because the company had an adequate remedy at law to vindicate its constitutional claims. App. 320-21. And the requested injunction was unripe because no action was imminent and, as discussed *supra* at note 2, the company was not facing a "bet the farm" choice that required immediate relief. App. 318-20.

## III.   The Bureau And The Public Have A Strong Interest In The Continued Enforcement Of The Consumer Protection Laws.

Finally, the company cannot show that the balance of equities tips in its favor or that a mandatory injunction would be in the public interest. The Bureau and the public have an important interest in the Bureau being permitted to continue

its work of protecting consumers from unfair, deceptive, and abusive acts and practices in the consumer financial marketplace. *See* App. 17 ("[T]he public has a strong interest in the vigorous enforcement of consumer protection laws."); *cf. PHH*, 839 F.3d at 10 (limiting remedy so that "[a]s before, the CFPB will continue to operate and perform its many critical responsibilities").

## CONCLUSION

This Court should deny the company's emergency motion for an injunction pending appeal.

Respectfully submitted,

Mary McLeod
    *General Counsel*
John R. Coleman
    *Deputy General Counsel*
Steven Y. Bressler
     *Assistant General Counsel*

/s/ Christopher Deal
Christopher Deal
    *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Tel: (202) 435-9582
Fax: (202) 435-7024
Christopher.Deal@cfpb.gov

*Counsel for Defendants-Appellees*

March 1, 2017

22

## CERTIFICATE OF COMPLIANCE WITH LENGTH LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the length limit of Fed. R. App. P. 27(d)(2)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,169 words, as determined by the word-count function of Microsoft Word 2010.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

/s/ Christopher Deal
Christopher Deal
    *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Tel: (202) 435-9582
Fax: (202) 435-7024
Christopher.Deal@cfpb.gov

March 1, 2017

**ADDENDUM**

**RULE 28(a)(1)(A) CERTIFICATE AS TO PARTIES AND AMICI**

Defendants-Appellees certify the following information regarding the parties pursuant to Rule 28(a)(1)(A):

Plaintiff-Appellant is John Doe Company. Defendants-Appellees are the Consumer Financial Protection Bureau and Richard Cordray, in his official capacity as Director of the Consumer Financial Protection Bureau.

Respectfully submitted,

Mary McLeod
    *General Counsel*
John R. Coleman
    *Deputy General Counsel*
Steven Y. Bressler
    *Assistant General Counsel*

/s/ Christopher Deal
Christopher Deal
    *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Tel: (202) 435-9582
Fax: (202) 435-7024
Christopher.Deal@cfpb.gov

*Counsel for Defendants-Appellees*

March 1, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2017, I filed and served the foregoing with the Clerk of the Court by causing a copy to be electronically filed via the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. I also caused four paper copies to be hand-delivered to the Court.

/s/ Christopher Deal
Christopher Deal
    *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Tel: (202) 435-9582
Fax: (202) 435-7024
Christopher.Deal@cfpb.gov