# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 17-5026** **September Term, 2016**

**1:17-cv-00049-RC**

**Filed On:** March 3, 2017

John Doe Company,

Appellant

v.

Consumer Financial Protection Bureau and Richard Cordray, in his official capacity as Director of the Consumer Financial Protection Bureau,

Appellees

**BEFORE:** Kavanaugh,* Millett, and Wilkins, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for injunction pending appeal, the response thereto, and the reply, it is

**ORDERED** that the motion for injunction be denied.

Appellant John Doe Company is a California limited liability company with its principal place of business in the Philippines. The Company is in the business of purchasing and selling income streams. A recent Government Accountability Office study explained that income-stream-marketing businesses often target vulnerable clients such as our military veterans and the elderly, charging effective interest rates far in excess of state usury laws (up to 87% in some cases) and providing lump sum pay-outs that are roughly half the minimum required under federal law governing pensions. *See* U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-15-846T, PENSION ADVANCE TRANSACTIONS: QUESTIONABLE BUSINESS PRACTICES IDENTIFIED 20–22, 23–26, 27 (2015). The GAO Report recommended that the Federal Trade Commission and the Consumer Financial Protection Bureau investigate income-stream marketers. The

---

* Circuit Judge Kavanaugh would grant the motion for injunction pending appeal for the reasons set forth in the attached statement.

Company itself has been the subject of regulatory proceedings by at least six States under their consumer protection laws. As the district court found, "neither side seems to dispute that John Doe Co. has been the subject of considerable negative publicity throughout the past few years." Dist. Ct. Op. Denying Prelim. Inj. 7.

In November 2016, the Consumer Financial Protection Bureau issued a Civil Investigative Demand ("CID") to the Company pursuant to its statutory authority, 12 U.S.C. § 5562(c)(1). Congress authorized the Bureau to issue CIDs to collect information relevant to the enforcement of specified consumer protection laws. *Id.*; *see also* 12 U.S.C. § 5511. The issuance of a CID is purely investigatory. It does not initiate a law-enforcement proceeding or even signify that any violation of law has been committed. *See* 12 U.S.C. § 5562(e).

CIDs are not self-enforcing, and non-compliance triggers no fine or penalty. 12 U.S.C. § 5562(e)(1); *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 979 F. Supp. 2d 104, 108 (D.D.C. 2013), *aff'd*, 785 F.3d 684 (D.C. Cir. 2015). The Company thus needed to do nothing in response to the CID it received. If a recipient declines to respond to the CID, the Bureau must obtain a court order to enforce it. 12 U.S.C. § 5562(e). In that court proceeding, the recipient can raise any relevant legal objection to enforcement of the CID.

In this case, the Company did not wait for the Bureau to seek enforcement of the CID, but instead filed a pre-enforcement suit in district court challenging the constitutionality of the Bureau's structure and seeking to halt any and all Bureau action "adverse" to the company, Mot. for Prelim. Inj. 26, including enjoining enforcement of the CID and forbidding the disclosure of the Company's identity. The district court denied Doe's request for a preliminary injunction, concluding that the Company had not met its burden of establishing either a likelihood of success or irreparable harm. The Company now requests an emergency injunction pending appeal.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Because the Company seeks the exceptional remedy of an injunction pending appeal, the Company

faces the difficult task of coming forward with evidence and argument showing that it is "likel[y]" that the district court "abused its discretion" in denying a preliminary injunction. *See, e.g.*, *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

The Company's sole argument regarding likelihood of success on the merits before this court and the district court has been to point to the now-vacated majority opinion in *PHH Corporation v. Consumer Financial Protection Bureau*, 839 F.3d 1 (D.C. Cir. 2016), *vacated, reh'g en banc granted,* No. 15-1177 (D.C. Cir. Feb. 16, 2017). But remember: the Company has to show not just that there is potentially persuasive authority for its legal position, but that the district court abused its discretion in not sufficiently crediting that showing in the balancing of equities that preliminary injunctive relief requires. Pointing to *PHH* is not enough for four reasons.

*First*, the *PHH* decision on which the Company relies has been vacated. And even within that decision, panel members differed on the appropriateness or necessity of issuing the separation-of-powers ruling given predicate statutory issues in the case. *PHH*, 839 F.3d at 56 (Henderson, J., concurring in part and dissenting in part) (declining to reach the constitutional question because an adequate remedy could be provided on the statutory ground); *see also id*. at 55 (Randolph, J., concurring) (also finding constitutional error in the ALJ who heard the proceeding). Without suggesting anything one way or the other about how the en banc court might ultimately resolve the *PHH* case and with all due respect to its panel members, the district court did not abuse its discretion in determining that simply pointing to the vacated majority opinion in *PHH* did not establish the *likelihood* of an identical constitutional ruling by the en banc court in *PHH* or the court in this case.

*Second*, even assuming for purposes of this motion that the en banc court were to reach the same constitutional ruling as the majority opinion in *PHH*, the Company is not remotely in the same constitutional position as PHH. PHH, remember, was on the receiving end of a completed law enforcement proceeding by the Bureau, and had been ordered to pay a $109 million fine. *PHH*, 839 F.3d at 7. In finding a separation-of-powers violation, the majority opinion repeatedly emphasized its view of the Constitution's assignment of "law enforcement" authority to the Executive Branch. *See, e.g.*, *id.* at 18 (discussing "the core Article II executive power of bringing law enforcement actions"); *id.* at 19 (Social Security Administrator distinguishable because

he "does not possess unilateral authority to bring law enforcement actions against private citizens, which is the core of the executive power and the primary threat to individual liberty posed by executive power"); *id.* at 20 n.5 (court's holding would not invalidate other single-director independent agencies because they "do not exercise the core executive power of bringing law enforcement actions").

The Company, by contrast, filed a pre-enforcement suit to stop a non-self-executing investigative demand for regulatory information. The Company voices no objection here to the scope or content of the CID and does not argue that it falls beyond the Bureau's statutory authority. The Company's sole argument is that the Bureau's single-Director structure is unconstitutional. And the sole injury it asserts on appeal is the harm occasioned by having to respond to a non-self-executing CID.[1]

Standing is determined on a claim-by-claim basis. *See, e.g.*, *Davis v. FEC*, 554 U.S. 724, 734 (2008) (explaining that standing is not "dispensed in gross" but a plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought") (quotation marks and citations omitted). And the only thing that happened prior to the Company filing its pre-enforcement suit was the Bureau's issuance of an investigative demand for information relevant to the Company's adherence to federal law. The Company accordingly has to demonstrate that the action of merely requesting information from private entities subject to regulation is by itself exclusively confined to the Executive Branch, and thus that issuance of this CID by the Bureau violates the separation of powers.

The Company has utterly failed that task. Nowhere in its arguments has it even acknowledged the distinct posture of its preemptive proceeding or the nature of the governmental action it seeks to halt. That failure to even attempt to discharge its particularized burden of proof is fatal. To obtain an injunction pending appeal on the ground that the Bureau transgresses the separation of powers just by issuing a CID—just by investigating a regulated entity's compliance with federal law—the Company would have to show that *only* the Executive Branch can demand information from regulated businesses or take such investigative steps. That is, to say the least, far from constitutionally self-evident. Congress issues subpoenas for information. And in *Buckley v. Valeo*, 414 U.S. 1 (1976), the Supreme Court specifically carved out such

[1] Nor does the Company object to any other regulatory measure taken by the Bureau, or identify in its injunction papers other regulatory burdens to which it objects. *Cf. State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015).

investigative measures from its holding that the Commission there was exercising powers forbidden by the Constitution, *id*. at 137–138.

That the Company frames its argument as a facial challenge to the Bureau's ability to take any "action adverse to Plaintiff" does not save it, even assuming it has standing to seek such sweeping relief at this pre-enforcement juncture on the basis of nothing other than the issuance of a CID. A statute is not facially unconstitutional unless it is unconstitutional in all of its applications. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). Given that, the district court certainly did not abuse its discretion in concluding that the Company's failure to even argue *its own* alleged constitutional injury (rather than PHH's) meant it had not established a likelihood of success on appeal.

*Third*, the Company's argument that the alleged separation-of-powers violation requires that the Bureau be stopped in its tracks ignores traditional constraints on separation-of-powers remedies. Often in separation-of-powers cases, severance of the unconstitutional provision is the chosen remedy. That is what the now-vacated majority opinion in *PHH* did—the decision just severed the Director's for-cause removal provision, making him removable by the President at will. As the opinion repeatedly stated, the Bureau could continue its work apace. *See, e.g.*, *PHH*, 839 F.3d at 8 (declining to "shut down the entire CFPB"); *see also Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010) (severing unconstitutional provision requiring for-cause removal of officers); *Buckley*, 424 U.S. at 142 (allowing the FEC to continue its investigations and administrative actions even though it was unconstitutionally structured).

In addition, vacatur of past actions is not routine. The *PHH* decision did not undo the Bureau enforcement action and make it start over from scratch. The court simply remanded for the Bureau to address specified matters. *See PHH*, 839 F.3d at 8. Indeed, the Supreme Court and this court have often accorded validity to past acts of unconstitutionally structured governmental agencies. *See, e.g.*, *Buckley*, 424 U.S. at 142; *Citizens for Abatement of Aircraft Noise, Inc. v. Metropolitan Wash. Airports Auth.*, 917 F.2d 48, 57 (D.C. Cir. 1990) ("We direct, however, that actions taken by the Board to this date not be invalidated automatically on the basis of our decision."), *aff'd*, 501 U.S. 252 (1991); *see also In re Application of President's Comm'n on Organized Crime*, 763 F.2d 1191, 1202 (11th Cir. 1985) (Fay, J., writing separately) ("[O]ur holding regarding the

separation of powers doctrine does not require the voiding" of a Commission subpoena); *id.* (Roney, J., specially concurring) (agreeing with decision to enforce the subpoena despite constitutional infirmity).

Given all of that, the Company failed to make any relevant showing at all that it has a likelihood of succeeding on its effort to prevent the Bureau from investigating the company via a CID or taking any other unspecified adverse action. Or at least the district court did not abuse its discretion in so concluding.

*Fourth*, the Company's prospects of success stumble in yet another respect: this court is not the proper forum for the Company to press its separation of powers claim. We have held on multiple occasions that, even if a party is the subject of an arguably unconstitutional regulatory action, that constitutional argument should be raised within the context of an administrative enforcement proceeding. *See, e.g.*, *Jarkesy v. SEC*, 803 F.3d 9, 12 (D.C. Cir. 2015); *Morgan Drexen*, 785 F.3d at 694; *cf. Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215–216 (1994) (holding that petitioner's constitutional claims could first be brought before the agency).

The Company notes that, in *Free Enterprise*, the Supreme Court permitted a stand-alone, pre-enforcement constitutional challenge. True enough. But the Supreme Court did so there because, to do otherwise, could have "foreclose[d] all meaningful judicial review[.]" *Free Enterprise*, 561 U.S. at 489 (quoting *Thunder Basin*, 510 U.S. at 212–213). The Company, by contrast, has immediate access to another forum in which it can raise its constitutional claim: the enforcement action pending in the United States District Court for the Central District of California. The Company has made no argument whatsoever that requiring it to raise its claim in an actual enforcement proceeding would somehow "foreclose all meaningful judicial review," *id.*

Also, unlike the plaintiffs in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), the Company has not identified any exceptional measures it must undertake in response to the CID. In fact, as noted, no action at all is required unless and until the CID is enforced. Thus, unlike *Abbott Laboratories* or *State Street*, the Company has come to this court to halt an agency action that requires nothing on its part, and certainly does not force it to "bet the farm," *Free Enterprise*, 561 U.S. at 490.

With respect to its obligation to demonstrate irreparable harm, the Company started with the entirely unsubstantiated and conclusory assertions that its customers and

employees will flee and its reputation will be materially harmed if word of the Bureau's investigation gets out. Tellingly, the Company does not suggest that customers or employees defected after *six* state regulatory investigations, an adverse GAO report, and the "considerable negative publicity" that has already surrounded the Company, Dist. Ct. Op. Denying Prelim. Inj. 7. The district court thus did not abuse its discretion in finding that the Company's conclusory assertions of reputational and economic harm, unaccompanied by any relevant declarations, did not establish an injury that is "both certain and great; * * * actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). In any event, it is "well settled that economic loss does not, in and of itself, constitute irreparable harm," *id*. at 674, especially when it is nothing more than speculation about how third parties might respond to routine regulatory investigations. For those same reasons, the Company has failed to demonstrate why the district court abused its discretion in holding that its name need not be kept confidential in public court proceedings. Indeed, the Company has offered this court no answer to the point that its identity could readily be obtained through a Freedom of Information Act, 5 U.S.C. § 552, request.

By its reply brief in this court (*see* Reply Br. 10 & n.2), the Company abandoned any further defense of those asserted reputational and economic harms, putting all of its eggs in the *per se* basket: the Company insists that any alleged separation-of-powers injury is by its very nature irreparable. The short answer is that this Court has held otherwise. In the absence of "immediate or ongoing harm stemming from the [Bureau's] alleged constitutional defects," the "violation of separation of powers" by itself is not invariably an irreparable injury. *In re al-Nashiri*, 791 F.3d 71, 79–80 (D.C. Cir. 2015); *see also Morgan Drexen*, 785 F.3d at 695 n.3 (being forced to await an enforcement proceeding and to litigate in another forum where no greater burden is imposed is not irreparable injury); *Tilton v. SEC*, 824 F.3d 276, 286 (2d Cir. 2016) (holding, in Appointments Clause challenge to SEC judges, that the injury of "'being subjected to an unconstitutional adjudicative procedure,' with the attendant 'embarrassment, expense, * * * ordeal, * * * [and] state of anxiety and insecurity'" was not an "irremediable harm") (alterations in original; citation omitted).

That is doubly so here where the only consequence of denying an injunction pending appeal in the Company's pre-enforcement suit is that it must raise its separation-of-powers arguments in the pending CID enforcement action in district court. As the Supreme Court has explained, "the expense and disruption of defending [oneself] in protracted adjudicatory proceedings" is not an irreparable harm. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980); *see also Renegotiation Bd. v. Bannercraft Clothing Co.*,

415 U.S. 1, 24 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."). That is because, if found to be constitutionally warranted, "[v]acatur, even at the appeal-from-final-judgment stage, would fully vindicate" the separation-of-powers rights of the Company. *In re al-Nashiri*, 791 F.3d at 801. The Company has offered this court no argument as to why such precedent does not apply here, or more to the point, why it was not an abuse of discretion for the district court to find no irreparable harm under these special circumstances.

Given the Company's failure to establish a likelihood of success on the merits of its pre-enforcement challenge and irreparable harm, the balance of equities—especially when it comes to consumer protection—weighs against granting an injunction pending appeal.

For the foregoing reasons, the motion for an injunction pending appeal is denied.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Amy Yacisin
Deputy Clerk

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 17-5026** **September Term, 2016**

KAVANAUGH, *Circuit Judge*, dissenting:

I would grant the motion for an injunction pending appeal.

Petitioner John Doe Company claims that it is being regulated by an unconstitutionally structured agency, the Consumer Financial Protection Bureau. The CFPB has issued binding rules that govern the Company's conduct, and the CFPB can bring enforcement actions against the Company for violations of those rules (or of statutes). Under the Supreme Court's and this Court's precedents, the Company as a regulated entity has standing to raise its free-standing constitutional claim, and the claim is ripe. The Company need not wait for a CFPB enforcement action in order to raise the constitutional challenge. *See Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 490 (2010); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152-53 (1967); *State National Bank of Big Spring v. Lew*, 795 F.3d 48, 53-54 (D.C. Cir. 2015). "To use the Supreme Court's words, we 'normally do not require plaintiffs to bet the farm' by violating the law in order to challenge the constitutionality of the regulating agency." *State National Bank of Big Spring*, 795 F.3d at 54 (quoting *Free Enterprise Fund*, 561 U.S. at 490 (internal quotation marks omitted)). Indeed, this Court has already held that a business may bring a stand-alone constitutional challenge to the structure of the CFPB – and that case is now pending in the U.S. District Court for the District of Columbia. *See id.* at 53-54.

In order to obtain a preliminary injunction or injunction pending appeal, the Company must show, as relevant here, (i) a likelihood of success on the merits and (ii) irreparable harm.

In my view, the Company has shown a likelihood of success on the merits of its constitutional claim, for reasons fully explained in this Court's opinion in *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016). The "CFPB's structure violates Article II of the Constitution because the CFPB operates as an independent agency headed by a single Director." *Id.* at 12. The CFPB's structure as a single-Director independent agency with vast rulemaking and enforcement authority is unprecedented in American history. To be sure, the *PHH* case will soon be reheard by this Court en banc. But in my view, the CFPB's structure is unconstitutional. And given the Supreme Court's Article II precedents, I believe that the CFPB's structure is likely to be ruled unconstitutional, whether by this Court sitting en banc or by the Supreme Court. The Company has shown a likelihood of success on the merits.

United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 17-5026** **September Term, 2016**

The Company also has shown irreparable harm. Irreparable harm occurs almost by definition when a person or entity demonstrates a likelihood that it is being regulated on an ongoing basis by an unconstitutionally structured agency that has issued binding rules governing the plaintiff's conduct and that has authority to bring enforcement actions against the plaintiff. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("Although a plaintiff seeking equitable relief must show a threat of substantial and immediate irreparable injury, a prospective violation of a constitutional right constitutes irreparable injury for these purposes.") (alteration and internal quotation marks omitted) (quoting *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998)); *see also National Federation of Federal Employees-IAM v. Vilsack*, 681 F.3d 483, 499 (D.C. Cir. 2012); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303-04 (D.C. Cir. 2006); *cf. Free Enterprise Fund*, 561 U.S. at 490-91; *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001).

The CFPB argues that, even if the agency is unconstitutionally structured under Article II, the remedy for the Article II violation would be to sever the for-cause removal provision, as *PHH* held. In that scenario, the CFPB would continue to regulate the Company, although the CFPB would do so as an executive agency instead of an independent agency. According to the CFPB, the Company therefore is not entitled to a preliminary injunction or injunction pending appeal to prevent the CFPB in its current form from regulating the Company now. The CFPB's analysis on this point is badly mistaken. Unless and until that remedy is put in place and the for-cause removal provision is actually severed from the statute, the Company will continue to be regulated on an ongoing basis by an unconstitutional agency. What the Company objects to is not merely regulation by the CFPB, but rather regulation by the CFPB in its current unconstitutional and unprecedented structure – namely, an independent agency headed by a single Director who is unaccountable to the President or to any fellow commissioners. A preliminary injunction would alleviate that ongoing harm.

The CFPB's primary strategy to defeat the Company's irreparable harm argument is deflection. The CFPB says there is no irreparable harm because other courts (the Central District of California and ultimately the Ninth Circuit) can entertain the Company's constitutional arguments in a challenge to the civil investigative demand issued to the Company by the CFPB. The CFPB's argument makes little sense, in my view. A party seeking a preliminary injunction in one court is not barred from obtaining the preliminary injunction simply because some other court might someday grant relief

to that party. To be sure, if this Court lacked jurisdiction or statutory authority to hear this case at this time, we could not grant a preliminary injunction. But if this Court has jurisdiction and statutory authority to hear a case (as we do here, *see Free Enterprise Fund*, 561 U.S. at 489-91), then a party's claim of irreparable harm in the preliminary injunction context is not defeated by the mere fact that the party's constitutional claims could also eventually be raised in another court.

Finally, the other two factors also support a preliminary injunction. The Company has shown that an injunction "is in the public interest" and that the "balance of equities tips" in its favor. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The public interest is not served by letting an unconstitutionally structured agency continue to operate until the constitutional flaw is fixed. And in this circumstance, the equities favor the people whose liberties are being infringed, not the unconstitutionally structured agency.

I respectfully dissent from the Court's denial of the motion for an injunction pending appeal.